**UNITED STATES of America**
v.
**Allan N. GOBERMAN, Appellant.**
No. 71-1666.

United States Court of Appeals,
Third Circuit.

Argued Jan. 6, 1972.

Decided April 7, 1972.

Before KALODNER, GANEY * and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

Allan Goberman was convicted in the district court in a trial without a jury on a one count indictment charging him with violating 18 U.S.C. § 1014[1] by knowingly making a false statement of material facts in a personal financial report submitted to York Federal Savings & Loan Association (York Federal) for the purpose of influencing it to approve and grant a loan. The indictment averred, inter alia, that Goberman knowingly made a false statement of material fact in that he "represented therein a net worth of $2,017,400, whereas, as he then and there well knew, his net worth was only $268,393.49." The district court memorandum of decision is reported at 329 F.Supp. 903 (M.D.Pa.1971).

This appeal is taken from the judgment of conviction and raises two primary issues:

(1) Did the Government prove that the false statement was knowingly made or that there was any intent to defraud the institution; and

(2) Was the personal financial statement submitted in connection with an application for a loan to a corporation controlled by the appellant a material fact within the meaning of the statute since it did not figure in the lender's grant of the loan to the corporation, Lancashire Hall, Inc.?

We need not recount all the facts since they are fully set forth in the memorandum decision. The pertinent facts on this appeal are that the appellant in May 1965 sought financing from York Federal in behalf of a nursing home to be constructed by Lancashire

Bernard L. Segal, Segal, Appel & Natali, Philadelphia, Pa., for appellant.

Mervyn Hamburg, U. S. Dept. of Justice, Appellate Section, Crim. Div., Washington, D. C., for appellee.

---

* Judge Ganey participated in the hearing and consideration of this appeal but died before final decision.

1. At the time of the indictment, 18 U.S.C. § 1014 provided, in pertinent part:
   "Whoever knowingly makes any false statement or report, or willfully over-values any land, property or security, for the purpose of influencing in any way the action of . . . a Federal Savings and Loan Association . . . upon any application, . . . commitment, or loan, . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Hall, Inc., a corporation in which he held 98% of the equity stock. The anticipated construction cost was $2,000,000 and a loan of $1,500,000 was requested for the corporation. There never was any requirement or suggestion that the appellant become personally liable for the loan. Stanley L. Gladfelter, Executive Vice President of York Federal, was generally impressed by the loan presentation. Goberman was a successful home builder in the Lancaster area, and although this project was his first nursing home, it seemed to have good prospects for success. On July 2nd, Gladfelter made the loan presentation to the executive committee of the board of directors. Although he made no specific recommendation, he conceded at trial that he made his favorable position known to the four members of the committee.

One of the committee members, Arthur Markowitz, decided he did not want to recommend the loan to the full board of directors until he had a personal financial statement from Goberman. Because Markowitz was dead at time of trial, Gladfelter testified he believed the motivation behind the request was simply to allow the directors to get a better idea about Goberman, with whom they had never before dealt.

On July 6th, Goberman called Gladfelter from a beach resort and asked how the loan application was coming. Gladfelter replied that one of the directors wanted a personal financial statement. Goberman protested that his accountant was not available and that he was not familiar with his own books. Notwithstanding those problems, Gladfelter urged Goberman to prepare something for submission. Goberman drove home from the beach, and late that night drew up a personal financial statement from memory. The next day it was submitted to the savings and loan association, and the loan was approved.

At trial, the Government proved that Goberman had failed to list several large liabilities although he had incurred them only a week or two before he wrote out the statement. On June 29th, Gladfelter had informed him that the loan would be presented to the executive committee that week. On the same day, Goberman transferred $116,000 from corporations controlled by him to his personal accounts. The debt to the corporations was not reflected in his financial statement. In addition, on June 30th Goberman borrowed $250,000 from the Commonwealth National Bank of Lancaster, and again failed to list the liability on the statement. Furthermore, he listed assets of $80,000 in Government bonds when in fact he had only about $8,600 worth.

■■ Goberman asserted that all of these errors were caused by his lack of knowledge of his books and his haste in preparing the statement. We believe that although the circumstantial evidence did not eliminate every possibility inconsistent with guilt, the district judge carefully analyzed all of the evidence and could properly conclude that Goberman, as an experienced businessman, knowingly made a false statement. United States v. Blair, 456 F.2d 514 (3d Cir., filed Feb. 23, 1972); United States v. Boyle, 402 F.2d 757 (3d Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969).

The substance of the telephone conversation between Gladfelter and Goberman established that such knowing misstatements were committed with intent to influence the loan. While three of the executive committee were ready to approve the loan without the personal report, Markowitz was not so inclined. Although the proposed loan was solely to the corporation, the fourth member of the executive committee, Markowitz, may well have believed that Goberman's personal financial condition provided some insight as to his business acumen and the likelihood of the success of the project. More importantly, it would indicate the personal resources available to Goberman in the event Lancashire Hall, Inc., a new and untried adventure, ran into difficulties. Markowitz, a lawyer, might have been able to persuade his fellow directors that the loan was impru-

dent if the statement was unsatisfactory. Gladfelter, who testified for the defense at trial, stated that while he did not see any necessity for the personal financial statement, he added that if one were submitted which reflected a net worth of less than $500,000, he would have had second thoughts about the loan. Although appellant ultimately showed at trial that he may have been worth more than $500,000 at the time in question, it is not a defense. Goberman did not know that fact at the time and the extreme inflation of his net worth could reasonably have been found to be for the purpose of improperly influencing the directors' decision.

The appellant argues vigorously that since he was not expected to be personally liable on the loan to Lancashire Hall, Inc., and the record discloses that York Federal did not rely on his statement in making the loan, the judgment of conviction should be reversed. We must disagree. The appellant misconceives the meaning of materiality in Section 1014. It is not merely directed to false statements which are actually used in the decision to make a loan. It requires that all statements supplied to lending institutions such as Federal Savings & Loan Associations, which have the capacity to influence them, be accurate or at least not knowingly false, United States v. Kay, 303 U.S. 1, 5–6, 58 S.Ct. 468, 82 L.Ed. 607 (1938); Poulos v. United States, 387 F.2d 4 (10th Cir. 1968); Blake v. United States, 323 F.2d 245 (8th Cir. 1963). Requiring proof of reliance on the statement by the lending institution would wreak havoc with enforcement of the provision. A successful prosecution for the violation would depend on the wholly fortuitous factor of *actual reliance* and not at all upon the intent of the guilty party. The obvious result would be that not all statements which could potentially harm the United States would be subject to prosecution, undermining the legitimate purpose Congress sought to achieve. Henninger v. United States, 350 F.2d 849 (10th Cir. 1965).

 Taking the facts in the light most favorable to the Government as we are required to do on this appeal, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there was sufficient ground for the district judge to conclude that Goberman made false statements on his personal financial report with the intent to influence the savings and loan association.

We have reviewed all of appellant's other contentions and find them without merit.

The judgment of conviction will be affirmed.